UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| GABRIEL BOU NATER, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 23-cv-1408-JES ) |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., | ) ) ) ) |
| Defendant. | ) |

**ORDER AND OPINION**

In this putative class action, Plaintiff Gabriel Bou Nater, individually and on behalf of two putative classes, filed suit against Defendant State Farm Mutual Automobile Insurance Co. ("State Farm"). He alleges that State Farm violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by engaging in unlawful and invasive use of unsolicited and nonconsensual robocalls for the purpose of generating business. *See* Doc. 8 (the "Amended Complaint").[1]

State Farm has now moved to dismiss the Amended Complaint for lack of jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 10. The motion is supported by a memorandum (Doc. 11) (collectively, the "Motion") and several exhibits. Doc. 10-1 to Doc. 10-5. Nater opposes the Motion (Doc. 15, the "Response"), supported by a single exhibit. Doc. 15-1. State Farm filed a motion for leave (Doc. 16) to file a reply (Doc. 16-1 (the "Reply"), but that motion (Doc. 16) is DENIED, and so this

---

[1] Nater amended his initial complaint (Doc. 1) in response to State Farm's first motion to dismiss. Doc. 5.

1

Order and Opinion does not incorporate the Reply (Doc. 16-1).[2] For the following reasons, the Motion (Doc. 10) is DENIED in its entirety.

## Background[3]

Factual Background

On May 23, 2023, Plaintiff received an unsolicited call that utilized an artificial and pre-recorded voice (hereafter, the "Robocall").[4] The artificial voice on the Robocall queried Nater's interest in automotive insurance and asked for demographic information (e.g., Date of Birth, Zip Code, and Name), which he provided. The voice then notified Nater that an insurance rate specialist would follow up.

---

[2] State Farm, in moving for leave to file the Reply, argues that that the Response raises new arguments and issues that could not have been anticipated, including that 1) State Farm's Fed. R. Civ. Pro. Rule 12(b)(1) motion should be considered as a motion raised pursuant to Rule 12(b)(6), 2) a non-frivolous federal claim automatically confers standing, 3) State Farm's evidence is inadmissible, and 4) Nater filed an affidavit as an exhibit to the Response. State Farm's justification for requesting leave is unavailing. *See* CDIL-LR 7.1(B)(3). For one, many district courts, when ruling on TCPA claims, convert Rule 12(b)(1) motions to motions under Rule 12(b)(6) – such an argument should have been anticipated. Moreover, when State Farm proffered evidence in support of its Rule 12(b)(1) challenge, it should reasonably have expected Nater to contest it and provide his own evidence in rebuttal. Finally, Nater's argument as to non-frivolous claims is not so extraordinary as to permit State Farm leave to file a reply.

[3] The Court accepts the facts stated in the Amended Complaint as true for the purposes of a motion to dismiss. *See Fehlman v. Mankowski,* 74 F.4th 872, 874 (7th Cir. 2023).

[4] In detailing the factual allegations of the suit, the Court considered State Farm's Exhibit D2, provided to it by Nater, which is a USB drive that contains the contents of the Robocall. The Court finds that the Robocall is integral to the Amended Complaint and otherwise referenced in it.

State Farm has also provided Exhibit D1, which is a demand letter from Nater in which he attempted to settle the dispute before commencing litigation. *See* Doc. 10-4 at 1-4. And, State Farm's Exhibit E is a clarifying follow-up email to the demand letter. *See* Doc. 10-5. The Parties do not rely on these exhibits in their motion briefing, so the Court need not pay them further heed in detailing the factual underpinnings of the Amended Complaint.

The next day, Nater received a text message from Donna Roberts with Aaron Franklin State Farm ("Franklin Agency") regarding auto insurance. She indicated that she would be calling him soon and provided him with a phone number. Soon after, Nater contacted that phone number inquiring as to whether he had given any consent to receive the Robocall. A different individual answered the phone and stated that the Franklin Agency had purchased leads from a different company and that much of the information in these leads was incorrect.

TCPA Generally

"The TCPA prohibits the use of certain communication practices that intrude upon consumers' privacy." *Worley v. Mun. Collections of America, Inc.*, JZL-14-2418, 2015 WL 890878, at *3 (N.D. Ill. Feb. 27, 2015) (citing *Mims v. Arrow Fin. Serv.*, 565 U.S. 368, 371 (2012)). "Among other things, the TCPA generally makes it illegal to place what are colloquially known as 'robocalls' to someone's home phone or cell phone, subject to differing rules depending on which type of phone number is called." *Loyhayem v. Fraser Fin. & Ins. Servs., Inc.*, 7 F.4th 1232, 1233 (9th Cir. 2021). The statutory provision which applies to calls made to cell phones, as is relevant here, provides in pertinent part: "It shall be unlawful for any person ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a ... cellular telephone service." § 227(b)(1)(A)(iii). And, the TCPA provides a private right of action for individuals to receive $500 in damages for each violation, plus treble damages if the violation was willful or knowing. § 227(b)(3).

Theories of Liability

Of note, Nater claims three possible avenues to hold State Farm accountable for the Robocall. First, he alleges that State Farm placed the Robocall. Second, he alleges that State Farm

3

is vicariously liable for an unknown entity placing the Robocall due to the existence of an agency relationship. Finally, he asserts that State Farm is liable under a sub-agency theory, as the Franklin Agency as State Farm's agent act acted within the scope of its agency in utilizing a third party to conduct a Robocall on State Farm's behalf. Nater is entitled to lodge alternative theories of liability. *Cholly v. Uptain Group, Inc.*, RWG-15-5030, 2015 WL 9315557, at *2 (N.D. Ill. Dec. 22, 2015) ("The Seventh Circuit has held that a party may make as many alternative claims as she wishes in her pleading, even if they are inconsistent, and the pleading will be sufficient if any of the claims are sufficient.") (citing *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 597 (7th Cir. 2012)).

Evaluating the Motion

The Court first addresses State Farm's Rule 12(b)(1) motion. *See Khan v. Bitter*, HDL-22-6617, 2023 WL 6311561, at *2 (N.D. Ill. Sept. 28, 2023) ("'When a motion to dismiss is based on a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b)(6) defenses, the court should consider the Rule 12(b)(1) challenge first.'") (quoting *Rizzi v. Calumet City*, 11 F. Supp. 2d 994, 995 (N.D. Ill. 1998) in turn citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). This is because a dismissal for lack of subject matter jurisdiction renders a Rule 12(b)(6) defense moot, so it need not be addressed. *Barlow-Johnson v. Ctr. for Youth and Family Sols.*, SEM-22-3214, 2023 WL 5826966, at *1 (C.D. Ill. Sept. 8, 2023). Accordingly, the Court now tackles State Farm's argument for dismissal under Rule 12(b)(1).

**Rule 12(b)(1)**

State Farm seeks dismissal under Rule 12(b)(1), arguing that the Court lacks subject matter jurisdiction because the Franklin Agency contacted Nater in response to a validly collected lead

4

distinct from the Robocall, and as the Robocall cannot be fairly traced to State Farm, Nater cannot establish standing. *See* Doc. 10 at 2.

Legal Standard

"Rule 12(b)(1) is the means by which a defendant raises a defense that the court lacks subject-matter jurisdiction," such as a challenge to the plaintiff's standing. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020); *see also* Fed. R. Civ. P. 12(b)(1). Where the defendant makes a facial challenge to the sufficiency of the complaint questioning subject matter jurisdiction, the court "accept[s] all well-pleaded factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021) (citation omitted). When the defendant contends that "there is in fact no subject matter jurisdiction," even if the pleadings are "formally sufficient," the court may "look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citation omitted). In such a challenge "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Apex Dig., Inc. v. Sears, Roebuck, & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). But, a district court still considers the allegations in the complaint as evidence of jurisdiction, however weak. *See, e.g.*, *Adeyola v. Reddy*, ___ F. Supp. 3d ___, 2024 WL 703696, at *4 (E.D.N.C. 2024) (considering plaintiff's allegations as "mere evidence," but as evidence nonetheless, in assessing a factual challenge to subject matter jurisdiction); *Sequeira v. Republic of Nicaragua*, JEM-JG-16-25052, 2017 WL 8772507, at *3 (S.D. Fla. Aug. 1, 2017), *report and recommendation adopted*, 2017 WL 8772508 (S.D. Fla. Sept. 22, 2017) (same);

*Shafmaster Fishing Co. v. United States*, 814 F. Supp. 182, 184 (D.N.H. 1993) (same). And, a factual challenge to jurisdiction requires that a movant proffer "conflicting evidence," *Freiburger v. Emery Air Charter, Inc.*, 795 F. Supp. 253, 257 (N.D. Ill. 1992), that "test[s] the existence of jurisdictional facts underlying [a plaintiff's] allegations." *Murphy v. United Parcel Service, Inc.*, 528 F. Supp. 3d 983, 987 (E.D. Wis. 2021) (citation omitted). Under a factual challenge to jurisdiction, a plaintiff must establish "jurisdictional facts by a preponderance of the evidence." *Sykes v. Cook Inc.*, 72 F.4th 195, 206 (7th Cir. 2023) (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540–41 (7th Cir. 2006)).

<u>Scope of State Farm's Jurisdictional Challenge</u>

As discussed, a movant's opposition to jurisdiction under Rule 12(b)(1) may either be a facial or factual challenge. Here, the Court is inclined to conclude that State Farm raises the latter. Indeed, State Farm has provided several exhibits in support of its Rule 12(b)(1) argument. Docs. 10-1 to 10-3. And, State Farm cites the legal standard for evaluating a Rule 12(b)(1) motion that raises a factual challenge to a complaint. *See* Doc. 11 at 13 (quoting *Cohee v. Hoos*, JES-231288, 2023 WL 6560483, at *2 (C.D. Ill. Oct. 6, 2023)). Thus, as State Farm raises a factual challenge, the Court may appropriately consider the Parties' exhibits in connection with State Farm's claim that the record evidence does not establish a nexus between it and the Robocall. The Court now details these exhibits.

Exhibit A contains State Farm's Do-Not Solicit Guidelines ("DNS Guidelines"). Doc. 10-1 at 2-3. Of relevance to this action, State Farm has emphasized the following excerpt, *id.* at 2:

> Agents who use **auto-dialing devices or pre-recorded messages or engage vendors who use autodialing services** for calling or texting or use pre-recorded messages or pre-set text messages, for any reason, this includes both marketing and non-marketing messages do so without company authorization and support and may expose themselves to potential legal liability. **Therefore, the agent commitment program and Errors & Omissions coverage may not apply.** In

addition, the unauthorized use of auto-dialers or use of pre-recorded messages raises serious concerns and could impact the trust relationship between State Farm and the agent.

Exhibit C includes an affidavit from Eli Coburn, the Director of Marketing for Ads Logistix (Doc. 10-3 at 2-8, the "Coburn Affidavit"). "Ads Logistix functions as a lead generation entity, utilizing its owned and operated platform, 1nsurancerates.com." *Id.* at 2. The Coburn Affidavit includes four sub-exhibits. *See id.* at 10-13 (The Jornaya Guardian TCPA Report); *id.* at 15 (1insurancerates.com consent page); *id.* at 17-39 (1insurancerates.com marketing partners list); *id.* at 41-44 (1insurancerates.com terms and conditions).[5]

Exhibit C is offered to support that an individual requested an insurance quote on 1insurancerates.com, and input the following partially redacted information, *id.* at 6-7:

First Name: Gabriel
Last Name: Nater
Address: **redacted**
City: Cleveland
State: TN
Zip Code: 37312
Vehicle Year: 2014
Vehicle Make: HONDA
Vehicle Model: CR-V
E-mail Address: jfjuezc@hotmail.com
Phone Number: xxx-xxx-4111

Second, it shows that 1insurancerates.com contains some TCPA safeguards, which are obtained through a user's acceptance of its terms and conditions. Third, it shows that the lead

---

[5] According to the Coburn Affidavit, Jornaya is a "third-party… industry leader in lead validation and verification, and it ensures that leads and the 'opt-ins' acquired from lead generation websites are validated and verified." Doc. 10-3 at 3. The Jornaya Guardian TCPA Report is essentially a reenactment of the session data used to create the referenced insurance lead asserted by State Farm, showing the individual requesting coverage information agreed to the terms and conditions (*id.* at 41-44).

The Court deliberately address Exhibit C before Exhibit B, as this order better showcases the timeline of events that supposedly led to the Robocall.

generated with the above-excerpted information (hereafter, the "Nater Lead") was transferred to a second company, MediaAlpha.

Exhibit B is an affidavit of MediaAlpha's Deputy General Counsel, Lance Martinez. *See* Doc. 10-2 at 2-4 ("Martinez Affidavit"). MediaAlpha operates a technology platform in which it serves as a broker of consumer leads between publishers (*e.g.*, Ads Logistix) and advertisers (*e.g.*, insurance agents affiliated with State Farm). *Id.* 2. The Martinez Affidavit is used to show that the Nater Lead was transferred by MediaAlpha to the Franklin Agency on May 24, 2023, at 10:06 AM EST. *Id.* at 3.

Notably, the Court may also consider Gabriel Nater's affidavit provided in support of the Response. Doc. 15-1 at 1-4 (the "Nater Affidavit"). In the Nater Affidavit, Plaintiff attests under oath that he never visited 1insurancerates.com, and that he does not recognize some of the information in the Nater Lead, such as the vehicle specifications and the address.

The Court now turns to the contours of Article III standing, *i.e.*, the jurisdictional requirement that is being challenged.

Standing

"Article III of the Constitution limits federal judicial power to certain cases and controversies, and the irreducible constitutional minimum of standing contains three elements." *In re Recalled Abbott Infant Formula Prod. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024) (citations omitted). "Standing has three elements. A plaintiff must have (1) a concrete and particularized injury in fact (2) that is traceable to the defendant's conduct and (3) that can be redressed by judicial relief." *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937 (7th Cir. 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). It is a plaintiff's burden to establish standing, as he is "the party seeking to invoke federal jurisdiction." *Nabozny v. Optio Sols. LLC*,

84 F.4th 731, 734 (7th Cir. 2023) (citations omitted). And, [s]tanding must be established for each claim a party brings." *Bahiraei v. Blinken*, ___ F. Supp. 3d ___, 2024 WL 640801, at *6 (N.D. Ill. 2024) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

State Farm does not contest the first and third elements of standing, arguing only that Nater cannot prove traceability. Doc. 11 at 12.[6] "Traceability measures causation." *Garrison v. U.S. Dep't of Educ.*, 636 F. Supp. 3d 935, 939 (S.D. Ind. Oct. 2022) (citing *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). It does so to ensure the injury-in-fact is "not the result of the independent action of some third party not before the court." *Pavlock v. Holcomb*, 35 F.4th 581, 590 (7th Cir. 2022) (citations omitted). Also, of particular relevance here, "courts have found that unwanted calls in the TCPA context were 'fairly traceable' to defendants where the plaintiff alleged some factual context surrounding the contested calls that supported an inference that the defendant or its agent had made the call." *Scruggs v. CHW Group, Inc.*, RJK-20-48, 2020 WL 9348208, at *4 (E.D. Va. Nov. 12, 2020).

At first blush, certain evidence lends credence to State Farm's argument that the Franklin Agency contacted Plaintiff due to the Nater Lead as opposed to the Robocall, thus eliminating causation. Indeed, State Farm provides convincing evidence that shows the Franklin Agency received the Nater Lead from MediaAlpha and contacted Plaintiff approximately 30 minutes later.[7]

---

[6] Nater argues that the mere existence of a non-frivolous claim brought pursuant to a federal statute defeats any challenge to subject matter jurisdiction. Doc. 15 at 10-11. However, "'[s]atisfying Article III's requirements does not automatically confer statutory standing[,]' nor is statutory standing 'a substitute for Article III standing.'" *Thrasher–Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 908 (N.D. Ill. 2012) (quoting *George v. Kraft Foods Global, Inc.*, 270 F.R.D. 355, 364 (N.D. Ill. 2010) in turn citing *Kohen v. Pacific Inv. Mgmt. Co., LLC*, 571 F.3d 672, 677 (7th Cir. 2009); *Raines v. Byrd*, 521 U.S. 811, 820 n. 3 (1997)).

[7] Per the follow-up to the demand letter, Nater indicated that Roberts texted him at 10:38 AM EST on May 24, 2023, and the Martinez Affidavit shows that the Franklin Agency received the Nater Lead from MediaAlpha that same day at 10:06 AM EST.

9

And, the Martinez Affidavit states that the Nater Lead was likely created from the quote request on 1insurancerates.com, and not a pre-recorded call. Moreover, the Robocall did not purport to represent State Farm's interests in particular, and Nater has not alleged that the phone number tied to the Robocall is under State Farm's control. Yet, State Farm's evidence and accompanying argumentation is insufficient to prevail at this juncture.

State Farm does not dispute that Nater received a Robocall soliciting insurance business at 6:08 PM EST on May 23, 2023, *i.e.*, the injury-in-fact, and that the very next day he received the text message from the Franklin Agency. Indeed, State Farm's argument requires the Court to ignore the temporal proximity of the Robocall with the Franklin Agency's text message and assume that the Franklin Agency could only have received Nater's information from MediaAlpha. But the Court cannot focus solely on the exhibits attached to the Motion. Nor can State Farm permissibly ask Nater to provide evidence to support his jurisdictional allegations when it has not provided anything to the contrary. *Cf. Baccari v. Carguard Admin., Inc.*, WB-22-1952, 2022 WL 3213839, at *3 (E.D. Pa. Aug. 8, 2022) (granting defendant's factual challenge under Rule 12(b)(1) because defendant proffered evidence that "***directly contradict[ed]***" plaintiff's bases for standing, and plaintiff failed to provide adequate evidence in rebuttal) (emphasis added). In such a case, a plaintiff may "'rely on the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.'" *Martin v. Bottom Line Concepts, LLC*, ___ F. Supp. 3d ___, 2024 WL 1119982, at *4 (S.D.N.Y. 2024) (quoting *Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017)). Thus, the question here is whether it is plausible that the uncontroverted allegations in the Amended Complaint, *i.e.*, the Robocall and subsequent contact by the Franklin Agency, show that Nater's undisputed injury is fairly traceable to State Farm.

Here, the temporal proximity between the Robocall and the Franklin Agency text message goes to the very heart of the causal requirement that is read into the "fairly traceable" element of standing. *Cf. Barrett v. QuoteWizard.com, LLC*, LTS-20-11209, 2020 WL 7626464, at *6 (D. Mass. Nov. 12, 2020) (noting that the close temporal proximity between a TCPA-violating message by an unidentified third-party and follow-up by the defendant supported a finding that the communication was fairly traceable under a plausibility standard); *see also Roper v. Rise Interactive Media & Analytics, LLC*, 2023 WL 7410641, *5 (N.D. Ill. Nov. 9, 2023) (relying on temporal proximity between data breach and an unknown third party's attempt to exploit the plaintiff's information in concluding that Article III traceability was sufficiently plausible).

State Farm references the DNS Guidelines as a wholesale method of precluding any connection between itself and the Robocall. This, however, does not suffice. Several of Nater's largely uncontested and specific allegations in the Amended Complaint permit an inference that the call was made on behalf or for the benefit of State Farm and is fairly traceable to it. *See, e.g.*, Doc. 8 at 11-13 (alleging that State Farm, *inter alia*, knowingly accepted business generated from pre-recorded calls, maintained control over insurance agents' telemarketing activities and advertising, knew that its products were offered through pre-recorded solicitations made on its behalf, and substantially relied on agents to service its business). This is not a case of a plaintiff filing a complaint with little more than a bare allegation that a defendant is liable for the actions of a third party due to a presupposed, baldly asserted, and unsupported agency relationship. *See, e.g.*, *Barker v. Sunrun Inc.*, KJG-18-855, 2019 WL 1983291, at *3-4 (D.N.M. Apr. 29, 2019). And, the Court's approach here tracks that of the majority of federal district courts: Judges frequently "recognize[] that the anonymous nature of robocalls impedes a plaintiff's ability to identify who facilitates the call," and so hold that "the plausibility standard does not require [a] plaintiff to

definitively connect [a] defendant[] to the call[] he received." *Zeitlin v. Palumbo*, 532 F. Supp. 3d 64, 71 (E.D.N.Y. 2021); *cf. Morris v. SolarCity Corp.*, RS-15-5107, 2016 WL 1359378, at *2 (N.D. Cal. Apr. 6, 2016) (denying motion to dismiss TCPA claim concerning a pre-recorded communication in which the identity of the caller was yet to be ascertained because the plaintiff "alleged facts from which [the defendant's] direct or indirect liability may plausibly be inferred" even though it "certainly was plausible that the calls could have been made by some such third party…").

In light of the foregoing, the temporal proximity between the Franklin Agency's message and the Robocall, when combined with the aforementioned factual pleadings and the enigmatic nature of the Robocall, permit Nater to meet his burden to establish Article III standing, and in turn, the Court's ability to exercise subject matter jurisdiction at this juncture. *Cf. Haymarket DuPage, LLC v. Vill. of Itasca*, SCS-22-160, 2024 WL 809110, at *12 (N.D. Ill. Feb. 27, 2024) (noting that traceability is a less demanding standard than routine proximate causation, and is essentially "a watered down version of causation."). State Farm's proffer of an alternative means through which the Franklin Agency procured Nater's information does not eviscerate these allegations. *Cf. Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 906 (N.D. Ill. 2016) ("…simply presenting an alternative explanation for the facts alleged in the complaint is insufficient to demonstrate that the complaint fails to plausibly suggest a right to relief.") (citation omitted).

In light of the foregoing, State Farm's Rule 12(b)(1) Motion is DENIED. Thus, Nater's request for jurisdictional discovery is rendered moot. *See* Doc. 15 at 19-21. The Court now turns to the Motion as it relates to the challenges levied under Rule 12(b)(6).

**Rule 12(b)(6)**

State Farm argues, under Rule 12(b)(6), that Nater has failed to plead facts that state a claim as to its direct and vicarious liability. Doc. 10 at 2-3. In particular, State Farm argues that Nater has not alleged any nonconclusory facts to plausibly suggest that either 1) it placed the Robocall or 2) there exists a liability-inducing link between itself and the entity responsible for placing the Robocall.

Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In reviewing the motion, the Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the nonmovant. *See Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 612 (7th Cir. 2019). To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put the defendant on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "allegations must be enough to raise a right to relief above the speculative level." *Hardimon v. American River Transp. Co., LLC*, 95 F.4th 1130, 1133 (7th Cir. 2024) (citation omitted).

Rule 12(b)(6) and Materials Outside the Complaint

"In general, a court may only consider the plaintiff's complaint when ruling on a Rule 12(b)(6) motion." *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013).

However, courts may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss[.]" *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1357 (4th ed. 2024) ("[C]ourts… may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned…"). With respect to considering documents not attached to the complaint, "Seventh Circuit precedent 'makes clear that this rule includes a limited class of attachments to Rule 12(b)(6) motions.'" *Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010) (quoting *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002)). In particular, "[d]istrict courts may ... consider other documents attached to a motion to dismiss when they are referenced in the complaint and central to the plaintiff's claim." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 n.1 (7th Cir. 2021) (citing *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)). In addition, such document must be "concededly authentic." *Fin. Fiduciaries, LLC v. Gannett Co., Inc.*, 46 F.4th 654, 663 (7th Cir. 2022) (citations omitted). Beyond that, if a court considers other matters outside the pleadings, the motion to dismiss must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d).

State Farm seeks to draw on the DNS Guidelines, as discussed above, to support its Rule 12(b)(6) motion. *See* Doc. 11 at 19. State Farm argues that the DNS Guidelines are appropriately before the Court, as they are referenced in the Amended Complaint. *Id.* at 9 n.2. In particular, State Farm points to paragraph 70 in the Amended Complaint, in which Nater alleges that it "issues to its agents manuals . . . and other materials, supplies and services, which agents are expected and directed to use and follow." In the Response, Nater argues that the DNS Guidelines should not be

14

considered as the document is not authenticated, and State Farm has not laid a proper foundation for the Court to consider it. Doc. 15 at 10.

The Court agrees with Nater, and declines to consider the DNS Guidelines in connection with the 12(b)(6) motion for three separate reasons.[8]

First, the DNS Guidelines are not accompanied by an authenticating affidavit or any other means through which the Court may ascertain their authenticity. *Cf. F.E. Moran, Inc. v. Johnson Controls, Inc.*, ___ F. Supp. 3d. ___, 2023 WL 6519975, at *3-4 (N.D. Ill. 2023) (noting that the "best practice" to authenticate documents attached to a motion to dismiss is through use of an affidavit, but considering documents despite no affidavit, in part, due to defendant's offer to notarize). Second, the DNS Guidelines appear to have been updated on May 25, 2021, Doc. 10-1 at 3, and there is nothing in the record that indicates those guidelines effective two years later when the Robocall took place. Third, and finally, the DNS Guidelines are provided without context. For a Rule 12(b)(6) motion, State Farm cannot cherry-pick a single directive without providing a more fulsome picture as to what types of possibly relevant manuals are mandated onto its insurance agents. If allowed to do so, Nater would be fundamentally disadvantaged. This Court echoes the Fourth Circuit, which held that the consideration of a defendant's proffered material before discovery, when defendant predominantly controls the relevant evidence, would effectively "force[] the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *cf. Lautzenhiser v. Coloplast A/S*, RLY-11-86, 2012 WL 4530804, at *8 (S.D. Ind. Sept. 29, 2012) ("… this court remains mindful of the information disparities between parties when deciding whether a claim

---

[8] None of the remaining exhibits are relevant to the Court's ruling on the 12(b)(6) motion.

survives a Rule 12(b)(6) motion to dismiss.") (citations omitted). Thus, the DNS Guidelines are not appropriately before the Court in connection with State Farm's 12(b)(6) argument.

Before delving into the meat of the analysis, the Court briefly outlines the TCPA.

TCPA Pleading Requirements

A plaintiff must establish three elements to state a claim for a violation of the TCPA: "(1) the defendant called a cellular phone, (2) using a... prerecorded message or artificial voice, (3) without the recipient's prior consent." *Condo v. Convergent Outsourcing, Inc.*, JRH-119-136, 2020 WL 9048632, at *2 (S.D. Ga. May 14, 2020) (citations and brackets omitted). Here, the second and third elements are not presently disputed. As to the vigorously contested first element, Nater lodges four theories of TCPA liability under which State Farm may be held accountable. As stated, one such theory is direct liability.

For a defendant to be directly liable under the TCPA, it must have initiated the disputed phone call. *See In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 ¶ 24 (2013). And, initiation occurs when the defendant physically places the calls or is "so involved in" their placement that it essentially made them itself. *Warciak v. Subway Rests., Inc.*, CPK-16-8694, 2019 WL 978666, at *2 (N.D. Ill. Feb. 29, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020). "The so involved standard is demanding; a defendant generally does not initiate calls placed by third-party telemarketers, even if the third party had acted on its behalf." *Bennett v. Celtic Ins. Co.*, JRB-20-6172, 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (citation omitted).

The other three theories of TCPA liability levied by Nater are nestled under the "vicarious liability" bracket. In this way, a "defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir.

16

2014), *aff'd*, 577 U.S. 153 (2016). Federal common law follows the Restatement (Third) of Agency, and includes "not only formal agency, but also principles of apparent authority and ratification." *Hossfeld v. Allstate Ins. Co.*, SRH-20-7091, 2021 WL 4819498, at *4 (N.D. Ill. Oct. 15, 2021) (citations omitted). To no surprise, Nater alleges all three sub-theories.

Before moving onto whether Nater has sufficiently pleaded facts to establish any one theory of liability, the Court notes that it need not address all four types, rather, if even one theory survives dismissal, then the case as a whole can move forward. *See Bilek v. Nat'l Congress of Emps.*, 470 F. Supp. 3d 857 (N.D. Ill. 2020) (concluding that the plaintiff stated a TCPA claim for vicarious liability under an actual authority theory of agency liability, and thus declined to address vicarious liability theories of apparent authority and ratification, as well as direct liability, before commencing discovery), *rev'd on other grounds*, *Bilek v. Federal Ins. Co.*, 8 F.4th 581 (7th Cir. 2021). And so, with this principle in mind, the Court first addresses whether Nater has pleaded a plausible claim of State Farm's vicarious liability for the Robocall through a chain of agency relationships based on actual authority. He does.

<u>State Farm's Vicarious Liability: Actual Authority</u>

In broad strokes, State Farm argues that actual authority cannot form a basis for its vicarious liability as Nater failed to plead that it 1) vested the unknown entity with actual authority to place the Robocall and 2) vested the Franklin Agency with actual and delegable authority to place the Robocall. Doc. 11 at 17-20.[9]

---

[9] "Actual authority may be express or implied." *FTC v. Credit Bureau Ctr., LLC*, 235 F. Supp. 3d 1054, 1061 (N.D. Ill. 2017) (citing *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000)). And so, despite State Farm's focus on express authority, the Court expands its analysis to also include implied authority.

An agent acts with actual authority to bind the principal when "the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01 (2006). If the principal authorizes the agent to do so, agents may appoint subagents to perform the agent's functions. *Id.* § 3.15(1)–(2). Actions taken by a subagent carry the same legal consequences as actions taken by the appointing agent. *Id.* Cmt. d.

Before addressing the merits of the Parties' argumentation, the Court notes that "[a]t the pleading stage, 'a generalized factual predicate that supports the inference of agency will suffice.'" *CouponCabin, Inc. v. PriceTrace, LLC*, TMD-18-7525, 2019 WL 1572448, at *1 (N.D. Ill. Apr. 11, 2019) (quoting *Am. Kitchen Delights, Inc. v. Signature Foods, LLC*, JJT-16-8701, 2018 WL 1394032, at *4 (N.D. Ill. Mar. 20, 2018)). Indeed, "'[a]gency is typically a factual issue, with the plaintiff at the pleading stage only required to allege a factual basis that gives rise to an inference of agency relationship through the use of generalized as opposed to evidentiary facts.'" *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016) (quoting *Mauer v. Am. Intercontinental Univ., Inc.*, SLE-16-1473, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016)). And, federal district courts do "not require specifics of the defendant's business relationships at the pleading stage as these facts are generally within the defendant's sole knowledge and plaintiffs must obtain such evidence through discovery." *Gebka v. Allstate Insurance Co.*, SJC-19-6662, 2021 WL 4951520, at *2 (N.D. Ill. Oct. 25, 2021) (citing *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014)). In other words, pleading an agency or sub-agency relationship that may lead to vicarious liability, especially in the context of a TCPA action, is not so high – a key question is this: Does the plaintiff provide the defendant with adequate notice of his claim? *See Cunningham v. Foresters Fin. Servs., Inc.*, 300 F. Supp. 3d 1004, 1016 (N.D. Ind. 2018) (citing

*Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 733 (N.D. Ill. 2014)); *cf. Vessal v. Alarm.com*, SJC-17-2188, 2017 WL 4682736, at *3 (N.D. Ill. Oct. 18, 2017) (denying motion to dismiss vicarious-liability TCPA claim made on information and belief). Nater does that, and more.

Nater alleges that State Farm gave its insurance agents, like the Franklin Agency, the actual authority to make the Robocalls. Doc. 8 at 13.[10] He also alleges that State Farm's insurance agents are authorized to hire third parties, including the unknown entity that contacted him, for marketing purposes. *Id.* Furthermore, Nater alleges that its insurance agents contracted with the unknown entity to place the Robocall to communicate with consumers. *Id.* at 14. And, Nater alleges that State Farm hired the unknown entity, who was authorized to use State Farm's trademark and employ a pre-recorded voice, to generate insurance leads. *Id.* at 14, 15-16.[11] Finally, Nater alleges that State Farm's insurance agents serve it through soliciting insurance business, *id.* at 13, but are still subject to State Farm's direction and control with respect to advertising, telemarking, and geographic placement. *Id.* at 12. Such control is an important factor in evaluating legal agency. *See Karon v. CNU Online Holdings, LLC*, JHL-18-7360, 2019 WL 3202822, at *3 (N.D. Ill. July 16, 2019).

Based on the foregoing, the Court concludes that Nater has plausibly pled State Farm's vicarious liability for the Robocall by alleging a chain of agency relationships based on actual

---

[10] Nater confusingly refers to "State Farm's agents" throughout the Amended Complaint. Though Nater's use of vernacular is questionable, the Court does not, in finding plausible inferences in his favor, presume that Nater intended to plead a legal conclusion of agency. Rather, it is reasonable to read the Amended Complaint as using the term "agent" as shorthand for an "insurance agent."

[11] Although some of the relevant allegations as to the relationship between the unknown entity and State Farm are nestled under "Apparent Authority," Doc. 8 at 14, the Court may still consider them in evaluating Nater's claim of actual authority, as complaints are reviewed "as a whole," not on a piecemeal basis. *Atkins v. City of Chi.*, 631 F.3d 823, 831 (7th Cir. 2011).

authority. *Cf. Smith v. State Farm Mutual Ins. Co.*, 30 F. Supp. 3d. 765, 775-76 (N.D. Ill. 2014). Other theories of liability and arguments for dismissal, if they remain relevant, may be addressed at summary judgment with the benefit of a further-developed evidentiary record. *Cf. Klassen v. Solid Quote LLC*, ___ F. Supp. 3d ___, 2023 WL 7544185, at *3 (D. Colo. 2023) ("At this early stage of the proceedings, given the information asymmetry inherent in this [TCPA] action, I find that Plaintiff has adequately pleaded agency and that it is unnecessary for Plaintiff to settle on an exact agency theory as, until discovery is complete, it would be almost impossible for her to know this information."). Questions concerning the identity of the entity that issued the Robocall and its possible connections to State Farm will be better addressed after discovery. For now, Nater has done enough to survive this stage of litigation. Therefore, the Motion under 12(b)(6) is DENIED.

## Conclusion

For the foregoing reasons, State Farm's Motion (Doc. 10) is DENIED in its entirety. And, State Farm's motion for leave (Doc. 16) is DENIED.

Entered on this 14th day of May 2024.

*s/ James E. Shadid*
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE
